---

## Leffee of the Executors of WILLIAM THOMSON *v.* DAVID GILLILAND.

IN ejectment for land in *Pitt* townfhip, the plaintiff produced a location, No. 3201, dated 9th *May*, 1769, in name of *Robert Mitchel*, for three hundred acres, adjoining *John Donne*, on the road from the *Bullock-Pens*, to *Braddock's-Fields*; and fhowed alfo the location in the name of *John Dunn*, No. 3115, dated 20th *April*, 1769, for three hundred acres, at a place commonly called the *Bullock-pens*, at the *Nine-mile* run, on general *Braddock's* road, adjoining lands claimed by *John Frazer*, *Peter Rolleter*, *Conrod Winemiller*, and *William Elliot*.

He then propofed to give in evidence a draught of a furvey, without fpecification of date or quantity, but ftating the out lines, courfes and diftances, corner trees,

and adjoining claimants, with the following writing on the face of it: "*Robert Mitchel*, now *William Thomfon*," and underneath, "Good land, bought of Mr. *Joe Spear*, at 300*l.*" and, together with this, the copy of the location, put into the hands of *William Thomfon*, (the deputy furveyor) for furveying, indorfed in *Thomfon's* hand writing, "*Robert Mitchel*, No. 3201, executed."

*Brackenridge*, for the defendant, objected to this evidence. 1. Becaufe this draught is in the hand writing of the teftator of the plaintiff, made by the perfon interefted, whofe act, in his own behalf, has no validity, until recognifed by the furveyor general.

2. Becaufe this paper is not certified to have been a furvey made by *William Thomfon*, the deputy furveyor, nor by any one for him, or under his authority or direction; nor indeed ever made. It appears only a diagram.

*Woods* and *Young*, for the plantiff. 1. None but *William Thomfon* could have made the furvey. We will prove when it was made; and that it was before *William Thomfon* was interefted. Surveyors have always executed furveys of their own land.

2. It was determined at *Nifi prius* in *Huntington* county, that a diagram, made by the furveyor, the field notes of the furveyor, and the tracing of the lines on the ground, and finding them to correfpond with thofe defcribed on the draught, was fufficient evidence of the furvey. We will prove, that thefe lines have been traced on the ground, and correfpond. It is immaterial whether the furvey was returned or not: It is enough, if we prove, that it was made.

PRESIDENT. The teftimony is admiffible, as part evidence of a furvey.

Evidence was then given, that in 1769, the witnefs had a furvey to make adjoining this, was told by *William Thomfon*, that he had made this furvey for *Robert Mitchel*, and faw the frefh marks of the line of this furvey next his land, and they correfponded with the line on the draught fhewn; that the lines round *Mitchel's* furvey had been lately retraced, that the marks appeared old, and all made at one time, and the lines exactly correfponding with thofe on the draught fhewn; and that they comprehended the greater part of a field of *Gilliland's*.

*Leffee of Johnfon v. Cor. Shippen and Yeates J.*

1796.

The plaintiff then produced a conveyance, dated 4th *April*, 1770, from *Robert Mitchel* of *Cumberland* county, to *William Thomſon* and *Alexander Roſs*, of the land claimed under the location, acknowledged 6th *Auguſt*, 1770, and recorded 1ſt *September*, 1794.

Evidence was then given, that one *Winemiller* lived on this land, declaring, that he had purchaſed it from *Roſs* and *Thomſon*, before the war with *Britain*.

A conveyance, dated 6 *October*, 1793, from *Winemiller* to *Joſeph Spear*, for this land, was then produced; and alſo a conveyance from *Spear* to *William Thomſon*, dated 1ſt *June*, 1781.

The defendant then produced a copy of the ſame location to *Robert Mitchel*; a conveyance, dated 9th *September*, 1772, from *Robert Mitchel*, corporal in the 18th regiment, to *Jacob Bouſman*, of three hundred acres of land, adjoining a tract of land belonging to ——, on the road from *Bullock-pens* to *Braddock's-field*; an aſſignment, dated 9th *October*, 1772, by *Jacob Bouſman* to *Jacob Miller*; and a conveyance, dated 23d *February*, 1792, from *Jacob Miller* to *David Gilliland*. Proof was made of the hand writing of *Robert Mitchel*, corporal in the 18th regiment, to the conveyance to *Bouſman*; and it was alſo proved, that the name, *Robert Mitchel*, ſigned to the conveyance to *Thomſon* and *Roſs*, was not in the hand writing of *Robert Mitchel*, corporal in the 18th regiment.

*Brackenridge* then brought forward a witneſs, to prove that *Robert Mitchel*, corporal in the 18th regiment, had declared, that he had taken out the location.

*Woods* objected, that this would be admitting a man to make a title by his own declaration. If *Robert Mitchel* were preſent now, he could not be admitted as a witneſs; ſhall then his declarations be admitted?

*Brackenridge*. Though *Mitchel* could not *now* be admitted to prove, that he had then taken out the location, it may now be proved, that he *then* declared, that he had taken out the location.

PRESIDENT. Surely no man can be admitted to eſtabliſh a title by his own declarations. But declarations of intereſt at the time may perhaps be admiſſible, to ſhew that this perſon was the perſon named in the location. We will admit the teſtimony; but reſerve the

point, as fuch evidence, if proper, is precarious, and 1796. not ftrongly to be relied on.

A bill of exceptions was propofed; and it was agreed, that it might be drawn up afterwards.

The witnefs then proved, that after *William Thomfon* brought up the locations, *Robert Mitchel*, corporal in the 18th regiment, two ferjeants, and *John Dunn*, a clerk to *Alexander Rofs*, all then in the garrifon, told him, they had each of them got a location for land in this country, and were going out to have it furveyed. *Robert Mitchel* faid, his location was either for or near the *French Bullock-pens*, near to *William Elliot's*. When *Mitchel* was going to leave the garrifon, there were hot words between him and *Rofs*; and *Mitchel* told the witnefs, that *Rofs* wanted to have the location from him, but *he damned himfelf, if he fhould have it*, and faid he would convey it to another. *Rofs* had made ufe of the names of feveral foldiers, in taking out locations.

The defendant then produced teftimony, that, about the year 1772, *Jacob Miller* came into this country, and bought a tract of land from *Jacob Boufman*; and fome months afterwards, fent out one *Bougher* to improve on it. *Bougher* lived on it with his family.— There was alfo proof, that, when *Thomfon* furveyed the land, there was a cabbin on it raifed to the joifts; and proof, that *Bougher* fettled within what is now the claim of *Gilliland*.

A furvey, made 22d *Auguft*, 1790, by the furveyor of the diftrict, on *Mitchel's* location, was fhewn, containing two hundred and fixty-two 1-quarter acres.

*Young. Mitchel* was but a truftee, and had but the 3 *Att.* 96. mere legal or nominal right.

*Brackenridge.* The prefumption is, that *Robert Mitchel* took out the location, and had the intereft in it.— The contrary muft be proved. *Thomfon* abandoned his furvey, never returned it. The law has guarded againft fecret conveyances? Why not againft fecret furveys? No ufe was ever meant to be made of this furvey. Shall we bring forward notes found in a defk? Finding no return of a furvey, the improver had reafon to prefume, that the location (which coft but a dollar) with the furvey on it, was abandoned; and had good heart to go on, and make further improvements.

1796.    *Woods.* There was no improvement, at the time of the furvey, to defeat the legal title.   *Mitchel's* declaration is no evidence, that the location was his.   It only proves, that, when he heard, there was a location in his name, he was determined to claim the land.

PRESIDENT.  If the furvey was compleatly made in 1769, as it appears to have been, there was then no improvement or fettlement, that ought to have been regarded, and the title is in the perfon who has the interest in the location.

The interest was in the perfon who procured, and paid for the location.

If *Robert Mitchel*, corporal in the 18th regiment, was the perfon who procured the location, and paid for it, the interest was in him.   If the location was taken out by another, in the name of *Robert Mitchel*; *Mitchel* was but a truftee, without interest.

You will therefore enquire,    1. Whether *Robert Mitchel*, named in the location, had an interest, or only a bare truft.   2. Whether *Robert Mitchel* named in the location, was *Robert Mitchel*, corporal in the 18th regiment.   3. If he was, and was but a truftee, whether his title has come into the hands of *Gilliland*, *bona fide*, without notice of the truft, and for an adequate confideration: for if fo, *Gilliland* has the eftate clear of the truft.   For I cannot fee any good reafon for diftinguifhing this from the ordinary cafe of a truft, or for permitting owners of locations to run no rifk, while in ufing the names of others, they give them an opportunity of impofing on innocent purchafers.

The jury came to the bar, ready to give a verdict; and the plaintiffs fuffered a nonfuit.

NOTE.—See the cafe of a bill of exchange payable to a *fictitious* payee, a perfon not in exiftence, &c. 3 *T. Rep.* 174, 182, 481.—1 *H. Bla.* 313, 569.